**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| BRADLEY CHARLES LINDBERG, | No. ED CV 18-18-PLA |
| Plaintiff, | **MEMORANDUM OPINION AND ORDER** |
| v. | |
| NANCY BERRYHILL, DEPUTY COMMISSIONER OF OPERATIONS FOR THE SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on January 4, 2018, seeking review of the Commissioner's[1] denial of his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments. The parties filed Consents to proceed before a Magistrate Judge on January

---

[1] On March 6, 2018, the Government Accountability Office stated that as of November 17, 2017, Nancy Berryhill's status as Acting Commissioner violated the Federal Vacancies Reform Act (5 U.S.C. § 3346(a)(1)), which limits the time a position can be filled by an acting official. As of that date, therefore, she was not authorized to continue serving using the title of Acting Commissioner. As of November 17, 2017, Berryhill has been leading the agency from her position of record, Deputy Commissioner of Operations.

24, 2018, and February 23, 2018. Pursuant to the Court's Order, the parties filed a Joint Submission (alternatively "JS") on October 19, 2018, that addresses their positions concerning the disputed issue in the case. The Court has taken the Joint Submission under submission without oral argument.

**II.**

**BACKGROUND**

Plaintiff was born on September 23, 1982. [Administrative Record ("AR") at 174, 185.] He has past relevant work experience as a contribution solicitor. [AR at 29, 59.]

On January 13, 2014, plaintiff filed an application for a period of disability and DIB, and an application for SSI payments, alleging that he has been unable to work since November 24, 2013, or November 25, 2013. [AR at 22 (citing AR at 174-83, 184-91).] After his applications were denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 130-31.] A video hearing was held on September 16, 2016, at which time plaintiff appeared represented by an attorney, and testified on his own behalf. [AR at 35-60.] A vocational expert ("VE") also testified. [AR at 57-59.] On October 4, 2016, the ALJ issued a decision concluding that plaintiff was not under a disability from November 25, 2013, the alleged onset date, through October 4, 2016, the date of the decision. [AR at 22-29.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 172-73.] When the Appeals Council denied plaintiff's request for review on December 1, 2017 [AR at 1-6], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

**III.**

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622

F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Id. (internal quotation marks and citation omitted). However, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." Id. (quoting Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (internal quotation marks omitted)). The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Id. (internal quotation marks and citation omitted); see also SEC v. Chenery Corp., 318 U.S. 80, 87, 63 S. Ct. 454, 87 L. Ed. 626 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

**IV.**

**THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. Garcia v. Comm'r of Soc. Sec., 768 F.3d 925, 930 (9th Cir. 2014) (quoting 42 U.S.C. § 423(d)(1)(A)).

**A.     THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006) (citing Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999)). In the first step, the Commissioner must determine whether the claimant is currently engaged in

substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Lounsburry, 468 F.3d at 1114. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled because there is other work existing in "significant numbers" in the national or regional economy the claimant can do, either (1) by the testimony of a VE, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. part 404, subpart P, appendix 2. Lounsburry, 468 F.3d at 1114. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 721, 828 n.5 (9th Cir. 1995); Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since November 24, 2013, the alleged onset date.[2] [AR at 24.] At step two, the ALJ concluded that

---

[2] The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through September 30, 2015. [AR at 24.]

4

plaintiff has the severe impairment of seizures with chronic medical non-compliance. [Id.] He found plaintiff's reported conditions of "overweight status with hyperlipidema," chronic obstructive pulmonary disorder ("COPD"), and hypertension to be non-severe. [AR at 25.] He also mentioned plaintiff's "acknowledged" medical history that is significant for polysubstance use/abuse including methamphetamines, cocaine, mushrooms, and LSD, with "10 years remission *or* 6 years remission." [Id. (citation omitted, emphasis in original).] He noted that more recently, plaintiff reported smoking marijuana and drinking occasionally. [Id.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing. [AR at 27.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[3] to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c),[4] as follows:

> [H]e should not climb ladders, ropes, or scaffolding, or work near hazards such as at unprotected heights or close to dangerous moving machinery, and he should only frequently climb stairs or ramps, or balance, or stoop, kneel, crouch, or crawl.

[Id.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is able to perform his past relevant work as a contribution solicitor. [AR at 29, 59.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of November 25, 2013, through October 4, 2016, the date of the decision. [AR at 29.]

**V.**

**THE ALJ'S DECISION**

Plaintiff contends that the ALJ erred when he rejected plaintiff's subjective symptom testimony regarding pain, symptoms, and level of limitation. [JS at 4.] As set forth below, the

---

[3] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[4] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c), 416.967(c).

Court agrees with plaintiff and remands for further proceedings.

**A.      SUBJECTIVE SYMPTOM TESTIMONY**

Plaintiff contends the ALJ failed to articulate legally sufficient reasons for rejecting plaintiff's subjective symptom testimony. [JS at 4-10, 15-16.]

The ALJ summarized plaintiff's testimony as follows:

> [Plaintiff] acknowledges a medical history significant for polysubstance use/abuse including of methamphetamine, cocaine, mushrooms, and LSD, if inconsistently, with 10 years remission *or* 6 years remission. More recently, [he] only reports smoking marijuana and drinking alcohol occasionally without apparent need for substance rehabilitation. [He] is currently only 34 years of age.
>
> . . . .
>
> During the hearing, [plaintiff] testified under oath that his seizures continued to occur at least 3-4 times a month and they lasted from 4-5 minutes to sometimes up to 3-4 hours at a time. [He] testified that while he takes medication for seizures, this medication only helps his symptoms "a little." The undersigned notes that this testimony contradicts [plaintiff's] reports in the record, such as on August 15, 2014 that his seizure control had become "better" than before with medication. During the hearing, [he] acknowledged that his breathing problem was only "mild" in severity.
>
> . . . .
>
> Some of [plaintiff's] subjective complaints and limitations such as that he can only lift or carry 5-10 lbs., pay attention only 20 minutes, and walk only 800 feet appear to have no objective medical support in the record. They are also rather directly contradicted by his other reports of going shopping with his wife for 2 hours and walking his kids to school, etc. Similarly, [he] indicated on his function report that he "never" prepared himself snacks, although he weighs 215 pounds. In any case, [plaintiff's] wife acknowledges that [he] is able to use a microwave although only with her oversight. [His] wife similarly alleges that [plaintiff] requires her to watch him in all matters "all the time" even as he is otherwise able to pay bills, handle bank accounts, read a lot, watch TV, collect candles, shop with her for 2 hours, do the dishes, help walk their kids to school, draw as a hobby, and go to the grandmother's house 4 times a week. [His] wife did not mention the subjects of medical non-compliance with medications, sub-therapeutic medication levels shown on labs, belated following of specialist referrals until months after they were approved, and chronic marijuana and cigarette smoking against medical advice.

[AR at 25, 28-29 (citations omitted) (emphasis in original).]

The ALJ discounted plaintiff's subjective symptom testimony as follows:

> After careful consideration of the evidence, the undersigned finds that [plaintiff's] medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

[AR at 29.]

On March 28, 2016, prior to the ALJ's assessment in this case, SSR 16-3p went into effect. See SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). SSR 16-3p supersedes SSR 96-7p, the previous policy governing the evaluation of subjective symptoms. Id. at *1. SSR 16-3p indicates that "we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." Id. Moreover, "[i]n doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character[;] [i]nstead, we will more closely follow our regulatory language regarding symptom evaluation." Id.; Trevizo v. Berryhill, 871 F.3d 664, 678 n.5 (9th Cir. 2017). Thus, the adjudicator "will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person." SSR 16-3p, 2016 WL 1119029, at *10. The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." Id. at *2. The Ninth Circuit also noted that SSR 16-3p "makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after [the ALJ] find[s] that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms,' and 'not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness.'" Trevizo, 871 F.3d at 678 n.5 (citing SSR 16-3p).

To determine the extent to which a claimant's symptom testimony must be credited, the Ninth Circuit has "established a two-step analysis." Trevizo, 871 F.3d at 678 (citing Garrison, 759 F.3d at 1014-15). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Id. (quoting Garrison, 759 F.3d at 1014-15); Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007)) (internal quotation marks omitted). If the claimant meets the first test, and the ALJ does not make a "finding of malingering based on affirmative evidence thereof" (Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006)), the ALJ must "evaluate the intensity and persistence of [the] individual's symptoms . . . and determine the extent to which

[those] symptoms limit [her] . . . ability to perform work-related activities . . . ." SSR 16-3p, 2016 WL 1119029, at *4. An ALJ must provide specific, clear and convincing reasons for rejecting a claimant's testimony about the severity of his symptoms. Trevizo, 871 F.3d at 678 (citing Garrison, 759 F.3d at 1014-15); Treichler, 775 F.3d at 1102.

Where, as here, plaintiff has presented evidence of an underlying impairment, and the ALJ did not make a finding of malingering [see generally AR at 24-29], the ALJ's reasons for rejecting a claimant's credibility[5] must be specific, clear and convincing. Brown-Hunter v. Colvin, 806 F.3d 487, 488-89 (9th Cir. 2015); Burrell v. Colvin, 775 F.3d 1133, 1136 (9th Cir. 2014) (citing Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012)). "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Burrell, 775 F.3d at 1138 (quoting Lester, 81 F.3d at 834) (quotation marks omitted). The ALJ's findings "'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" Brown-Hunter, 806 F.3d at 493 (quoting Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc)). A "reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain." Bunnell, 947 F.2d at 346. As such, an "implicit" finding that a plaintiff's testimony is not credible is insufficient. Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (per curiam).

Here, the ALJ generally appears to have discounted plaintiff's testimony for the following reasons: (1) plaintiff's statements were not supported by the objective medical evidence; (2) plaintiff's statements regarding his past substance use history were inconsistent; (3) plaintiff was noncompliant with his medication; and (4) plaintiff's daily activities, as he described them, were inconsistent with his stated limitations.[6]

---

[5] While SSR 16-3p eliminated the use of the term "credibility," case law using that term is still instructive in the Court's analysis.

[6] Defendant also argues that the ALJ discounted plaintiff's testimony because of his
(continued...)

8

### 1. Objective Evidence

While a lack of objective medical evidence supporting a plaintiff's subjective complaints cannot provide the only basis to reject a claimant's subjective symptom testimony (Trevizo, 871 F.3d at 679 (quoting Robbins, 466 F.3d at 883)), it is one factor that an ALJ can consider in evaluating symptom testimony. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor the ALJ can consider in his credibility analysis."); accord Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). As the Ninth Circuit recently held, "an ALJ's 'vague allegation' that a claimant's testimony is 'not consistent with the objective medical evidence,' without any 'specific finding in support' of that conclusion, is insufficient." Treichler, 775 F.3d at 1103 (citation omitted); see Laborin v. Berryhill, 867 F.3d 1151, 1153 (9th Cir. 2017) (ALJ's statement that plaintiff's testimony regarding the intensity, persistence, and limiting effects of his symptoms was not credible to the extent his testimony is "inconsistent with the above residual functional capacity assessment" is an insufficient basis for discrediting testimony).

Here, the ALJ found that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the records for the reasons explained in this decision." [AR at 29.] The ALJ generally summarized the medical evidence from November 2013 through November 2015, and in some cases mentioned statements plaintiff made or symptoms he reported at those visits and then

---

⁶(...continued)
marijuana use, despite being advised that "excessive marijuana use can lower his threshold for seizures." [JS at 13 (citing AR at 305).] However, this was not a reason given by the ALJ, who merely noted in connection with plaintiff's alleged COPD that clinical signs and laboratory findings failed to support a diagnosis of COPD, which had a "'well-controlled' status even as [plaintiff] continues to smoke marijuana and cigarettes against medical advice." [JS at 13 (citing AR at 25).] "Long-standing principles of administrative law require [this Court] to review the ALJ's decision based on the reasoning and factual findings offered *by the ALJ* -- not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray, 554 F.3d at 1225-26 (emphasis added, citation omitted); Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001) ("[W]e cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision."). The Court will not consider reasons for discounting plaintiff's subjective symptom testimony that were not given by the ALJ in the decision. See Trevizo, 871 F.3d at 677 & nn.2, 4 (citation omitted).

contrasted those statements with the clinical findings. However, he did not specifically explain how the clinical findings belied plaintiff's statements. For instance, the ALJ noted that although plaintiff "reported episodes of a 'funny feeling in the stomach rushing to his head'" when plaintiff was hospitalized around the alleged onset date, and now "reported having about 4 of these episodes each week," his "**EEG was normal** . . . and without any evidence of seizures, and on examination, [his] neurological signs were also normal . . . [and] [t]he next day's brain MRI revealed only a suggestion of a 'subtle' volume loss although there was no abnormal signal change to confirm even sclerosis." [JS at 25 (citations omitted) (emphasis in original).] However, what the EEG report noted was that "no *definite* signal abnormality" was seen within the hippocampi, and also that the "evaluation is somewhat limited by motion artifact." [AR at 311 (emphasis added).] Additionally, although the ALJ found that plaintiff's testimony was inconsistent with his Seizure Report in which he stated that his seizure control as of November 24, 2014, had "become 'better' than before with medication" [AR at 28 (citing AR at 263)], that statement does not reflect that plaintiff's seizure control was complete, or even optimal, especially given his testimony that he was still experiencing 3-4 seizures monthly, down from 4-6 a month when he completed the Seizure Report. [See AR at 262.]

Even assuming this was a specific, clear and convincing reason for discounting plaintiff's testimony (which the Court does not find), the ALJ's determination to discount plaintiff's subjective symptom testimony for this reason rises or falls with the ALJ's other grounds for discrediting plaintiff. As seen below, those other grounds are insufficient.

### 2. Inconsistent Statements

In discounting plaintiff's testimony, the ALJ relied on his finding that plaintiff had made allegedly inconsistent statements regarding the date he last used substances other than alcohol or marijuana. [AR at 25 (citing AR at 302, 331).] However, a review of the records referred to by the ALJ reflects that plaintiff actually did *not* make inconsistent statements with regard to this issue. The first note referred to by the ALJ, a November 23, 2013, treatment note, states that plaintiff reported that with respect to "methamphetamine/cocaine/mushroom/LSD," "last time [used

was] 10 years ago."⁷ [AR at 302.] Then, the May 2, 2014, treatment note referred to by the ALJ, reflects the following: "[Plaintiff] also admits a history of methamphetamine use and denies using it in the past six years." [AR at 332.] Thus, the May 2, 2014, note *only* reflects non-*use* in the past six years; it does not state or imply that plaintiff admitted that he used methamphetamine or any of the other substances in the four years prior to that, i.e., in the past ten years. And, at the hearing, the ALJ did not probe into plaintiff's alleged use of "methamphetamine/cocaine/mushroom/LSD" to determine (in addition to the admitted methamphetamine use) which of the other substances he actually used or abused and the date of last use.

Moreover, the ALJ's "analysis" runs contrary to the mandate of SSR 16-3p as the focus was on plaintiff's overall character or truthfulness. In any event, even if plaintiff inconsistently said he had been in remission for 10 years or for 6 years, that inconsistency does not impact on his testimony regarding how his symptoms limit his ability to perform work-related activities. As such, this reason did not provide "the sort of explanation or the kind of 'specific reasons' we must have in order to review the ALJ's decision meaningfully, so that we may ensure that the claimant's testimony was not arbitrarily discredited," nor can the error be found harmless. Brown-Hunter, 806 F.3d at 493 (citing Treichler, 775 F.3d at 1103, Burrell, 775 F.3d at 1138).

This was not a specific, clear and convincing reason for discounting plaintiff's testimony.

### 3. Medication Noncompliance

Several times the ALJ pointed to plaintiff's alleged noncompliance with taking his medication. For instance, the ALJ states that on January 22, 2014, plaintiff "confessed to medical non-compliance *explaining that he was not able to tolerate Keppra as prescribed due to 'anger issues.'*" [AR at 25 (citing AR at 326) (emphasis added).] The ALJ then states that on March 12, 2014, plaintiff reported that his seizures had not improved, and lab results "showed 'levels are not therapeutic,' *suggesting medical non-compliance again*." [Id. (citing AR at 323 (emphasis in

---

⁷ Although the ALJ implies that plaintiff used *all* of these substances prior to his "remission," such a conclusion is not necessarily warranted.

11

original))].  Finally, on June 25, 2014, the ALJ reported that plaintiff's seizures "were again attributed to '**non-compliance to medication . . . .**'" [AR at 26 (citing AR at 344 (emphasis in original))].

"A claimant's subjective symptom testimony may be undermined by an 'unexplained, or inadequately explained, failure to . . . follow a prescribed course of treatment.'" Trevizo, 871 F.3d at 679 (quoting Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)).  Failure to assert a reason for not following treatment "can cast doubt on the sincerity of the claimant's pain testimony." Id. (quoting Fair, 885 F.2d at 603) (internal quotation marks omitted).  In Trevizo, the court found that the ALJ did not provide clear and convincing reasons for rejecting credibility when relying on two instances of the claimant failing to take her medication as a reason to discount her testimony.  First, Trevizo was prescribed narcotics for pain but did not take them because of a fear of becoming addicted.  Trevizo, 871 F.3d at 679-80.  Second, she was noncompliant with taking her diabetes medication because she feared that the medication was causing severe rashes.  Id. at 680.  Trevizo also indicated that there were periods in which she could not afford her diabetes medication.  Id. at 680-81.  The court held that Trevizo provided adequate explanations in both instances.  Id. at 681.  Therefore, the claimant's noncompliance was not "clear and convincing" evidence for rejecting her testimony.  Id. at 682.

The same is true here.  On January 22, 2014, plaintiff explained to his doctor that the Keppra was causing anger issues, and the doctor discontinued the Keppra and changed plaintiff's medication to Depakote.  [AR at 326, 327.]  Thus, to the extent plaintiff stopped taking his Keppra, he had a legitimate reason to do so.  Then, on March 12, 2014, although plaintiff reported that he "has improved with the [Depakote] and off Kepra," his levels were not therapeutic and he was "having small break through seizures." [AR at 323.]  As a result, the doctor decided to increase the Depakote from 500 mg a day, to 1,000 mg a day.  [AR at 323, 324.]  Thus, this report does not in any way suggest non-compliance with medication -- instead it suggests only that the prescription strength of the Depakote needed to be adjusted.  Additionally, plaintiff's reference to "improvement" in this instance may reflect an improvement in his anger issues, and not an improvement in his seizures, especially given that he was still reporting break-through seizures

at that visit. Thus, neither the January 22, 2014, treatment note, nor the March 12, 2014, treatment note, reflected unexplained noncompliance with medication. Finally, on June 25, 2014, plaintiff did report "increased seizure activity since he has been forgetting to take his medication." [AR at 343.] However, as noted by plaintiff, he has regularly reported that he has memory problems, and this provides a reason for his occasional non-adherence to his medication regimen. [JS at 8 (citing AR at 43, 242, 250, 343, 368, 394).] Plaintiff also notes that his "[s]ubsequent treatment with Dr. Jaffer in 2016 does not show problems with compliance, but [he] continued to experience several seizures." [JS at 8.] He refers to a number of notes in support: a January 13, 2016, abnormal EEG; ten "little seizures" reported in January 2016; two seizures in March 2016; a rash that appeared in April 2016 attributed to a change in medication; and a July 27, 2016, report that indicated he had three episodes in the prior two months despite taking his medications. [JS at 8-9 (citing AR at 377-78, 379, 380, 381, 382, 383).] None of these notes reflected a problem with compliance.

Although defendant attempts to suggest that there is "significant evidence throughout the record indicating that [plaintiff] failed to adhere to his medication regimen" [JS at 14], defendant supports that statement by saying that "blood tests over a year apart both indicated non-therapeutic levels of his antiseizure medication." [Id.] It appears that defendant may be referring to the March 12, 2014, report discussed above indicating that plaintiff was having break-through seizures on his medication [AR at 323], and possibly to a November 2015 emergency room visit for a seizure earlier in the day, in which the report noted that plaintiff was given 1,000 mg of his seizure medication after which he "felt much improved." [AR at 359.] Although plaintiff's therapeutic levels were low as described in the two lab reports, there is no mention in those reports that plaintiff had not remembered to take his medication. [See generally AR at 323, 359.] And, two incidences of low therapeutic levels almost 20 months apart (or even one year apart) is not sufficient evidence to establish regular noncompliance with a medication regimen.

Based on the foregoing, although there is some evidence of plaintiff occasionally "forgetting" to take his medication, it is not sufficient to support the ALJ's suggestion of regular "noncompliance" as a reason to discount plaintiff's testimony. This was not a specific, clear and

13

convincing reason to discount that testimony.

### 4. Daily Activities

The ALJ found that "[s]ome" of plaintiff's subjective complaints and limitations have no objective medical support in the record. [AR at 28.] He specifically pointed to plaintiff's testimony that he can lift or carry 5-10 pounds, pay attention for only 20 minutes, and walk only 800 feet without needing to rest. [Id.] The ALJ stated that those statements are also "directly contradicted" by plaintiff's statements that he goes "shopping with his wife for 2 hours and walking his kids to school, etc." [Id.] The ALJ, however, did not provide the full picture. [AR at 52-53.] Plaintiff testified that he does not feel comfortable lifting over 10 pounds because if he over-exerts himself, "it can make a seizure happen." [AR at 56.] And, although plaintiff may go shopping for two hours at a time, or walk his children to school, it is always with his wife there for supervision. [AR at 238, 240, 242, 250.] This was not a specific, clear and convincing reason to discount plaintiff's testimony.

The ALJ also implied that plaintiff's weight (215 pounds) belies his testimony that "he 'never' prepared himself snacks." [AR at 28 (citing AR at 212, 247).] The ALJ attempted to support this spurious "contradiction" with plaintiff's wife's testimony that plaintiff is able to use a microwave "although only with her oversight." [AR at 29.] Again, the ALJ did not provide the complete picture. Plaintiff did not state in his function report that he "'never' prepared himself **snacks**." [AR at 28 (emphasis added).] Instead, what he indicated was that he "never" prepared "food or meals" other than things like frozen pizza or microwave burritos. [AR at 247.] Plaintiff's wife corroborated that he does not cook on the stove or oven, and instead makes sandwiches or frozen foods in the microwave, while she watches. [AR at 239.] Plaintiff's wife also indicated that plaintiff helps get snacks for the children after school, "that don't need to be cooked." [AR at 238.] The ALJ's attempt to show that plaintiff's alleged ability or inability to prepare "snacks" for himself is inconsistent with his weight, is not a specific, clear and convincing reason to discount his testimony.

An ALJ may also discredit testimony when plaintiff reports participation in everyday

activities indicating capacities that are transferable to a work setting. Molina, 674 F.3d at 1113. However, "[e]ven where those activities suggest some difficulty functioning, they may be grounds for discrediting [plaintiff]'s testimony to the extent that they contradict claims of a totally debilitating impairment." Id. (citing Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1225 (9th Cir. 2010); Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009)). Here, however, the ALJ does not explain how the level of activity described by plaintiff, together with the level of seizure activity he reported, reflects a person capable of engaging in basic work activity for an eight-hour workday. [AR at 22.] Additionally, plaintiff's reported level of activity clearly *does* reflect that he has difficulties in performing his daily activities and that he has virtually constant supervision.

Thus, this was not a specific, clear and convincing reason for discounting plaintiff's subjective symptom testimony.

**B.     CONCLUSION**

Based on the foregoing, the ALJ's subjective symptom testimony determination was not "sufficiently specific" to allow this Court to conclude that the ALJ rejected plaintiff's testimony on permissible grounds and did not arbitrarily discredit his testimony regarding pain and fatigue. Brown-Hunter, 806 F.3d at 493 (quoting Bunnell, 947 F.2d at 345-46). Remand is warranted on this issue.

**VI.**

**REMAND FOR FURTHER PROCEEDINGS**

The Court has discretion to remand or reverse and award benefits. Trevizo, 871 F.3d at 682 (citation omitted). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Id. (citing Garrison, 759 F.3d at 1019). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly

evaluated, remand is appropriate.  See Garrison, 759 F.3d at 1021.

In this case, there are outstanding issues that must be resolved before a final determination can be made.  In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings.  First, because the ALJ failed to provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting plaintiff's subjective symptom testimony, the ALJ on remand, in accordance with SSR 16-3p, shall reassess plaintiff's subjective allegations and either credit his testimony as true, or provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting or rejecting any testimony.  Second, if warranted, the ALJ shall reassess plaintiff's RFC and determine at step four, with the assistance of a VE if necessary, whether plaintiff is capable of performing his past relevant work as a contribution solicitor.  If plaintiff is not so capable, or if the ALJ determines to make an alternative finding at step five, then the ALJ shall proceed to step five and determine, with the assistance of a VE if necessary, whether there are jobs existing in significant numbers in the regional and national economy that plaintiff can still perform.

**VII.**

**CONCLUSION**

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED:  October 30, 2018

PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE